```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

June White

    v.                                    Civil No. 15-cv-523-JL
                                                                Opinion No. 2016 DNH 174

Olga Gordon

**ORDER ON APPEAL**

This appeal from an order of the Bankruptcy Court in a Chapter 7 proceeding delves into the question of when and whether property held by a trust becomes part of a debtor's bankruptcy estate. June White, the appellant, argues that the Bankruptcy Court erred in concluding that a certain parcel of property, which the debtor, Thomas L. Morgenstern, had conveyed to a trust, and upon which White held a mortgage lien, should be treated as property of Morgenstern's bankruptcy estate. White argues that the Bankruptcy Court further erred in concluding that White's attempts to foreclose on the mortgaged property after Morgenstern petitioned for bankruptcy violated the automatic stay imposed by 11 U.S.C. § 362 and awarding attorneys' fees to Olga Gordon, the trustee of the Morgenstern's bankruptcy estate, under 11 U.S.C. § 105(a).

This court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of the Bankruptcy Court under 28 U.S.C. § 158(a)(1). See also L.R. 77.4. Finding no error in

the Bankruptcy Court's treatment of the property in question or its determination that White violated the statutory stay, the court affirms the Bankruptcy Court's decision.[1]

I.  **Standard of review**

When hearing an appeal from the Bankruptcy Court, this court applies the same standards of review governing appeals of civil cases to the appellate courts.  Cf. Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002).  As such, this court reviews the Bankruptcy Court's "findings of fact for clear error and conclusions of law de novo."  Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur), 737 F.3d 814, 817 (1st Cir. 2013).  The Bankruptcy Court's decision to award damages, costs, and fees is reviewed for abuse of discretion.  See Prebor v. Collins (In re I Don't Trust), 143 F.3d 1, 3 (1st Cir. 1998).

II.  **Background**

Morgenstern acquired title to real property located at 8 Maple Avenue in Rye, New Hampshire, in September 1992.  In 2009, he transferred the property to the Carlear Realty Revocable Trust (the "Carlear Trust"), and recorded the trust the same day.  Morgenstern was a 25% beneficiary of the Carlear

---

[1] Though the court finds no error in the Bankruptcy Court's award of sanctions, in light of supplemental filings by White and for the reasons discussed infra Part III.C, the court also orders further review of that award.

2

Trust and Alexander Sekulic was appointed the trustee. At the time the bankruptcy petition was filed, the Carlear Trust contained only the Maple Avenue property.

In November 2009, the Carlear Trust mortgaged the property to the appellant, June White, to secure a $40,000 loan. The trust then defaulted on the loan. White sued the Carlear Trust, Sekulic, and Morgenstern in Rockingham County Superior Court and obtained authority from that court to conduct a foreclosure sale of the Maple Avenue property.

Before White could foreclose, Morgenstern filed for bankruptcy protection on July 8, 2013.[2] White then began attempting to secure title to the Maple Avenue property. Appearing pro se, she moved the Bankruptcy Court to dismiss Morgenstern's bankruptcy petition in December 2013. She also engaged in efforts to foreclose on the Maple Avenue property by recording a series of affidavits in the Rockingham County Registry of Deeds on February 10, 2014, attempting to show her possession of the property.[3] Then, on March 29, 2014, White

---

[2] Morgenstern converted his petition for bankruptcy under Chapter 13 of the Bankruptcy Code to one under Chapter 7 shortly thereafter.

[3] New Hampshire law provides that a mortgagee may foreclose on mortgaged property by, among other means not implicated here, "entry into the mortgaged premises under process of law and continued actual possession thereof for one year." N.H. Rev. Stat. Ann. § 479:19, I.

obtained Sekulic's signature, as trustee of the Carlear Trust, on a deed conveying that property to White in exchange for $50,000.  White also recorded this deed.  White then began attempting to auction the property.  Sekulic, contesting the authenticity and validity of that deed and asserting that Morgenstern's bankruptcy estate had a continuing interest in the property, moved the Rockingham County Superior Court to enjoin the sale, which it did.

Gordon, the trustee of Morgenstern's bankruptcy estate, then sought the Bankruptcy Court's permission to revoke the Carlear Trust pursuant to New Hampshire law, see N.H. Rev. Stat. Ann. § 564-B:6-602, which the court granted on July 28, 2014. Several months afterward, Gordon filed an adversary proceeding against White in the Bankruptcy Court, seeking a declaratory judgment that the deed transferring the Maple Avenue property to White was void and requesting compensatory and punitive damages, see 11 U.S.C. § 362(k), as well as damages pursuant to 11 U.S.C. § 105(a).  After a trial, the Bankruptcy Court found that the Maple Avenue property constituted "property of the estate," and thus that White violated the automatic stay through her several actions taken in an effort to gain control of that property. See 11 U.S.C. § 362(a).  The Bankruptcy Court awarded Gordon her attorneys' fees and costs in the amount of $29,627.29, see id. § 105(a), but rejected her request for damages pursuant to

4

§ 362(k).  White, proceeding pro se, has timely appealed the Bankruptcy Court's decision of December 24, 2015, and the subsequent entry of judgment against her.

### III. Analysis

A bankruptcy petition triggers "a stay, applicable to all entities, of," among other actions:

> the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the [bankruptcy proceeding]; any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [and] any act to create, perfect, or enforce any lien against property of the estate . . . .

11 U.S.C. § 362(a)(2)-(4).  There is no dispute here that Morgenstern's bankruptcy petition, filed under chapter 13 of the Bankruptcy Code, see 11 U.S.C. § 1301 et seq., triggered the stay contemplated by § 362(a).  White challenges, instead, three determinations by the Bankruptcy Court:  (1) that the Maple Avenue property was property of the estate and, therefore, subject to the stay's provisions; (2) that White violated the stay through non-ministerial attempts to enforce the Superior Court judgment against and take possession of the Maple Avenue property; and (3) that those actions warranted sanctions, in the form of attorneys' fees, under 11 U.S.C. § 105(a).[4]

---

[4] The court need not address in detail the other issues White raises on appeal.  As to her arguments that the Bankruptcy Court erred in its July 28, 2014 order allowing Gordon to revoke the

5

These issues call into question "[t]he bankruptcy court's interpretation of the relevant statutes," which "presents a question of law," as well as "its application of those statutes to the facts of this case," which "presents a mixed question of law and fact that [this court] review[s] for clear error unless its analysis was 'infected by legal error.'" Prudential Ins. Co. of Am. v. SW Boston Hotel Venture, LLC (In re SW Boston Hotel Venture, LLC), 748 F.3d 393, 402 (1st Cir. 2014) (quoting Winthrop Old Farm Nurseries, Inc. v. New Bedford Inst. for Sav. (In re Winthrop Old Farm Nurseries, Inc.), 50 F.3d 72, 73 (1st Cir. 1995)). The court addresses each of White's allegations of error in turn.

    **A.   Property of the bankruptcy estate**

"The commencement of a bankruptcy case creates a debtor's estate, which is comprised of 'all legal or equitable interests of the debtor in property as of the commencement of the case.'"[5]

---

Carlear Trust to bring the property into the bankruptcy estate, White has waived them in light of her failure to timely appeal that order. See Fed. R. Bankr. 8002(a)(1); In re Abdallah, 778 F.2d 75, 77 (1st Cir. 1985) ("Untimely notice of appeal deprives the district court of jurisdiction to review the bankruptcy court's order."). Even were White's appeal timely, it appears to the court that any error in allowing Gordon to revoke the Carlear Trust would be harmless because, for the reasons discussed infra Part III.A.1, the trust need not have actually been revoked for the Maple Avenue property to be considered property of the bankruptcy estate.

[5] White takes aim at the Bankruptcy Court's reliance on Black's Law Dictionary to define the term "equitable interest" as used

NTA, LLC v. Concourse Holding Co., LLC (In re NTA, LLC), 380 F.3d 523, 527–28 (1st Cir. 2004) (quoting 11 U.S.C. § 541(a)(1)).  State law defines the contours of a debtor's interest in a given property.  See Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.").  "A bankruptcy estate cannot succeed to a greater interest in property than the debtor held prior to bankruptcy."  In re NTA, 380 F.3d at 528.

White's argument that the Maple Avenue property was not properly part of Morgenstern's bankruptcy estate has two facets.  First, she argues that the Maple Avenue property belonged to the Carlear Trust, not Morgenstern.  Second, White argues that she possessed the Maple Avenue property because she had power to foreclose on the property and received a deed to the property from Sekulic.  Neither argument prevails.

   1.  **The Carlear Trust**

White's first argument -- that ownership by the Carlear Trust removed the Maple Avenue property from Morgenstern's

---

in the Bankruptcy Code.  See Appellant Brief at 15-16; Gordon v. White (In re Morgenstern), 542 B.R. 650, 655.  White conflates equity in property, which -- as she correctly observes -- amounts to "the value of the estate minus any secured claims and exemptions," In re Traverse, 753 F.3d 19, 25 (1st Cir. 2014), with an equitable interest, which is a variety of ownership right that a person may have in property, cf. Hopkinson v. Dumas, 42 N.H. 296, 302 (1861) (interest in trust creates equitable interest in land).

7

bankruptcy estate -- fails primarily because of the power that Morgenstern, as settlor, could exercise over the Carlear Trust. Under the New Hampshire Trust Code, "[u]nless the terms of a trust expressly provide that the trust is irrevocable, the settlor may revoke or amend the trust." N.H. Rev. Stat. Ann. § 564-B:6-602. Morgenstern settled the Maple Avenue property on the Carlear Trust.[6] There is no dispute that the Carlear Trust was revocable and that its provisions were "silent as to the extent of the settlor's powers" to revoke the trust. In re Morgenstern, 542 B.R. at 656 (emphasis added). Accordingly, Morgenstern retained the power to revoke or amend the Carlear Trust.

White suggests that Morgenstern lacked this power because the Carlear Trust's provisions allowed the beneficiaries to revoke it "at any time by delivering to the Trustee(s) a written document signed by all the Beneficiaries." See Appellant's Brief at 17-18, 22. In doing so, she ignores the following provision of the New Hampshire Trust Code:

> The settlor may revoke or amend a revocable trust[] by substantial compliance with a method provided in the terms of the trust[] or by any other method manifesting clear and convincing evidence of the

---

[6] Though Sekulic was also a settlor of the Carlear Trust, the Bankruptcy Court observed no evidence that he contributed to the Trust and treated Mortgenstern as the sole settlor as a result. See In re Morgenstern, 542 B.R. at 656 n. 7. White does not challenge this conclusion.

8

>  settlor's intent if the terms of the trust do not
>  provide a method or do not expressly prohibit methods
>  other than methods provided in the terms of the trust.

N.H. Rev. Stat. Ann. § 564-B:6-602(c). Here, the trust does "not expressly prohibit methods other than" the method available to the beneficiaries and identified by White. Nor does it satisfy the condition precedent for disempowering the settlor to revoke the trust under N.H. Rev. Stat. Ann. § 564-B:6-602 -- that is, expressly providing that the trust is irrevocable. The provision permitting the beneficiaries to revoke the trust does not, therefore, abrogate the default rule allowing the settlor to revoke the trust.

As the Bankruptcy Court observed, when, as here, the debtor retains broad powers to revoke or amend the trust, bankruptcy courts in this circuit have held that the trust property becomes property of the bankruptcy estate. See, e.g., Marrama v. Degiacomo (In re Marrama), 316 B.R. 418, 422-23 (B.A.P. 1st Cir. 2004); Beatrice v. Braunstein (In re Beatrice), 296 B.R. 576, 581 (B.A.P. 1st Cir. 2003); Riley v. Tougas (In re Tougas), 338 B.R. 164, 175 (Bankr. D. Mass. 2006); see also 5 Collier on Bankruptcy § 541.27 (A. Resnick & H. Sommer eds., 16th ed. 2015) ("If the trust does not have a spendthrift clause . . . every right of the debtor under the trust becomes property of the estate. The same result is reached if, despite the inclusion of a valid spendthrift clause, the debtor has the power to amend or

9

terminate the trust."); cf. Marrama v. Citizens Bank of Mass. (In re Marrama), 430 F.3d 474, 483 (1st Cir. 2005), aff'd sub nom. Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007) (argument that property never became part of bankruptcy estate where Maine law granted settlor power to revoke trust at any time was "highly questionable"); Markham v. Fay, 74 F.3d 1347, 1359-60 (1st Cir. 1996) (concluding, by analogy to bankruptcy law, that federal tax lien against settlor reached trust property where settlor had power to "alter, amend, or revoke" the trust, and was also a trustee and beneficiary). But see George v. Kitchens by Rice Bros., 665 F.2d 7, 8 (1st Cir. 1981) (property of revocable trust not subject to settlor's bankruptcy estate where Massachusetts law did not recognize power of revocation as property).

New Hampshire law does not compel a contrary conclusion. As the Bankruptcy Court further observed, the fact that the Carlear Trust held the Maple Avenue property would not have prevented Morgenstern's creditors from reaching it absent a bankruptcy filing. Under the New Hampshire Trust Code, "[w]hether or not the terms of a trust contain a spendthrift provision, . . . during the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditor." N.H. Rev. Stat. Ann. § 564-B:5-505(a)(1). Morgenstern, as settlor of the trust, thus had the power to

revoke the trust. After he petitioned for bankruptcy, the bankruptcy estate assumed that power. See 11 U.S.C. § 541(a)(1) (bankruptcy estate obtains "all legal or equitable interests of the debtor in property as of the commencement of the case."); In re Marrama, 316 B.R. at 422-23.

In light of this, and the suggestion that courts "construe § 541 broadly to bring any and all of the debtor's property rights within the bankruptcy court's jurisdiction," In re Marrama, 316 B.R. at 422 (citing United States v. Whiting Pools, Inc., 462 U.S. 198, 205 n. 9 (1983)), this court cannot conclude that the Bankruptcy Court erred in finding that the Maple Avenue property, although held by the Carlear Trust, was properly within the bounds of Morgenstern's bankruptcy estate.

### 2. White's property

In the alternative, White argues that the Bankruptcy Court erred in considering the Maple Avenue property as part of the bankruptcy estate because it belonged to White, not Morgenstern or the Carlear Trust. See Appellant's Brief at 21-22. She offers two theories to support her ownership of the property at the relevant time. The Bankruptcy Court did not err in finding neither theory persuasive.

White first contends that she, rather than the Carlear Trust or Morgenstern, held legal title to the Maple Avenue

11

property during the bankruptcy proceedings because she had foreclosed on the property. Under the relevant statutory provisions, White as mortgagor could take title to the property "[b]y entry into the mortgaged premises under process of law and continued actual possession thereof for one year." N.H. Rev. Stat. Ann. § 479:19, I. White obtained a judgment authorizing her to foreclose on the mortgaged property on March 1, 2013. As the Bankruptcy Court points out, and as White does not dispute, White could not have taken possession of the property before that date. And that judgment alone, without engagement in the repossession process, did not give White title to the property. See Walker v. Chessman, 75 N.H. 20, 20 (1908) ("The mortgage subsisted after the judgment as before, and could only be foreclosed by the [mortgagor's] possession continued for a year."). Moreover, even if White had taken possession on March 1, 2013, she simply could not have had "continued actual possession" of the property "for one year" before Morgenstern petitioned for bankruptcy four months later, on July 8, 2013. Accordingly, White did not hold title to the Maple Avenue property through foreclosure at the time Morgenstern petitioned for bankruptcy.

White next argues that she held title to the Maple Avenue property because Sekulic, the trustee of the Carlear Trust, conveyed to her a deed to the property. Notably, White obtained

that deed in March 2014, several months after Morgenstern petitioned for bankruptcy and the automatic stay as to his estate's property took effect.  For the reasons discussed more fully below, the Bankruptcy Court did not err in finding that White obtained the deed in violation of the stay.  As such, the deed was void.  Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 976 (1st Cir. 1997) (holding that actions taken in violation of automatic stay are void, not merely voidable). Thus, White did not hold legal title to the Maple Avenue property through conveyance from Sekulic.

The Bankruptcy court therefore did not err in considering the Maple Avenue property as part of Morgenstern's bankruptcy estate.

B.  **Stay violations**

Having concluded that the Bankruptcy Court did not err in its determinations that the Maple Avenue property constituted bankruptcy estate property, the court now turns to White's contention that her actions with respect to that property did not violate the automatic stay invoked by 11 U.S.C. § 362(a). As discussed supra, that stay prohibits "all entities" from:

> the enforcement, against the debtor or against
> property of the estate, of a judgment obtained before
> the commencement of the [bankruptcy proceeding]; any
> act to obtain possession of property of the estate or
> of property from the estate or to exercise control
> over property of the estate; [and] any act to create,

13

> perfect, or enforce any lien against property of the estate . . . .

11 U.S.C. § 362(a)(2)-(4). Among other actions, the Bankruptcy Court found that White (1) obtained a deed to the Maple Avenue property from Sekulic, (2) recorded that deed, and (3) recorded affidavits "that were presumably aimed at furthering her attempt to foreclose" on the Maple Avenue property. In re Morgenstern, 542 B.R. at 658. The Bankruptcy Court concluded that White violated the automatic stay through each of these activities. Id.

White offers four arguments, none more persuasive than the rest, as to why her actions during the stay did not violate that stay. The court addresses each in turn, reviewing the Bankruptcy Court's application of the Bankruptcy Code to the facts for "clear error." In re SW Boston Hotel Venture, LLC, 748 F.3d at 402.

First, White leans on her argument, discussed supra Part III.A.1, that the Maple Avenue property belonged to the Carlear Trust, and thus White's actions did not violate the stay as to actions affecting the debtor's property. For the reasons discussed above, however, the structure of the trust and Morgenstern's control thereof led the Bankruptcy Court to conclude, correctly, that the Maple Avenue property was part of the bankruptcy estate. While, as White observes, the automatic

14

stay generally does not protect the property of non-debtors, cf. Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 979 (1st Cir. 1995), this is not such a case because Morgenstern, the debtor, retained an interest in the property of the trust -- both as settlor and beneficiary.

Second, White argues that because Sekulic conveyed the deed to her, White did not violate the stay by receiving it. On its face, however, the statute prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The court cannot conclude that the Bankruptcy Court clearly erred in determining that obtaining a deed to property that is part of the bankruptcy estate constituted such an act.

White then argues that her actions following receipt of the deed -- that is, recording the deed and her affidavits with the Registrar of Deeds -- were ministerial in nature, and thus not prohibited by the stay. "Ministerial acts . . . do not fall within the proscription of the automatic stay." In re Soares, 107 F.3d at 973-74. "A ministerial act is one that is essentially clerical in nature." Id. at 974. An act is ministerial when, for example, "an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's

15

discretion or judgment, the resultant act is ministerial." Id. White obtained a deed to the Maple Avenue property from Sekulic. She recorded that deed. She signed and recorded affidavits detailing her control of the Maple Avenue Property and collected affidavits on the same subject from three other individuals concerning the same. Even if the act of recording of the deed and affidavits was merely ministerial, and the court is not convinced that it was, White made a decision to take those actions. "[T]he decision which animated" them "occurred after the stay was in force," and accordingly violated the stay's provisions. Id. at 975. The court cannot conclude that the Bankruptcy Court clearly erred in deciding as much.

Finally, White appeals to statutory provisions shielding those who interact with the trustee of a trust in good faith from liability, see N.H. Rev. Stat. Ann. § 564-A:7. The question at issue here is not whether White has exposed herself to liability in her dealings with Sekulic, but whether she violated the statutory stay thereby. This argument is, therefore, inapposite and unavailing.

    **C.   Damages under § 105(a)**

White also charges the Bankruptcy Court with error in awarding damages to the Trustee under 11 U.S.C. § 105(a) and the order permitting the Trustee to set that award off against

16

White's secured claim.  The court reviews this decision for abuse of discretion.  See In re I Don't Trust, 143 F.3d at 3. "A bankruptcy court abuses its discretion if it ignores a material factor deserving of significant weight, relies upon an improper factor or makes a serious mistake in weighing proper factors."  Howard v. Lexington Invs., Inc., 284 F.3d 320, 323 (1st Cir. 2002) (internal quotations omitted).  The court finds no such abuse here.

Section 105(a) of the Bankruptcy Code allows the Bankruptcy Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.  11 U.S.C. § 105(a).  The Bankruptcy Court has broad discretion under this provision to award fees for civil contempt of the Bankruptcy Code's automatic stay.  See Ameriquest Mortg. Co. v. Nosek (In re Nosek), 544 F.3d 34, 43 (1st Cir. 2008) (Section 105(a) "provides the bankruptcy court broad authority to exercise its equitable powers -- where necessary or appropriate -- to facilitate the implementation of other Bankruptcy Code provisions"); Spookyworld, Inc. v. Town of Berlin (In re Spookyworld), 346 F.3d 1, 8 (1st Cir. 2003) ("Prior to the enactment of section 362(h) in 1984, contempt orders issued under section 105(a), including awards of damages, were routinely used to punish violations of the automatic stay.").

This court cannot conclude that the Bankruptcy Court's invocation of its broad discretion under § 105(a) to sanction White amounts to abuse of that discretion. The Bankruptcy Court found, as it must, that White had notice of the automatic stay and intended the actions which constituted the violation thereof. Lumb v. Cimenian (In re Lumb), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009) (citing Pratt v. Gen. Motors Acceptance Corp. (In re Pratt), 462 F.3d 14, 17 (1st Cir. 2006)). It ordered White to pay Gordon's attorneys' fees, in the amount of $29,627.29, and allowed that award to be set off against the value of White's secured claim. White's undeveloped and unsupported assertion that the Trustee litigated this action in "bad faith" by failing to settle it sooner, and thus is undeserving of such fees, see Appellant Brief at 28, in no way undermines the Bankruptcy Court's decision. To the contrary, the Bankruptcy Court judiciously analyzed amount of fees requested by the Trustee and discounted the award by two-thirds upon finding the requested award not entirely justified.[7]

In the time since White filed this appeal, however, she has notified this court that Gordon has abandoned the Maple Avenue

---

[7] White also argues that the Bankruptcy Court erred in granting the Trustee's request to set this award off against White's claims against the estate, on the grounds that she owes no money to the estate. The court's affirmance of the Bankruptcy Court's sanctions decision likewise resolves that issue.

property as part of the bankruptcy estate, leaving White to recover the value of her mortgage interest in the property through foreclosure proceedings.  See Notice of Abandonment of Property (document no. 41).  Gordon responded.  See Appellee's Response (document no. 42).  If true, White's allegations may raise questions as to Gordon's handling of the bankruptcy estate and the litigation below in light of White's argument that Gordon ought have abandoned the property at the outset.  See Appellant's Brief at 22-23.  It also raises questions about the propriety of offsetting the sanctions award against White's claims against the estate in a situation wherein White may no longer have such claims.

This court concludes that these issues would benefit from an evaluation by the Bankruptcy Court, with its greater familiarity with the parties and their course of dealing, and accordingly orders further review of whether an offset award of sanctions remains appropriate.  The Bankruptcy Court is free to take more evidence if deemed necessary to carry out this mandate.

**IV.  Conclusion**

For the reasons set forth above, this court AFFIRMS the order of the Bankruptcy Court and orders further proceedings

consistent with this opinion.  The clerk shall enter judgment accordingly and close the case.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated: September 27, 2016

cc: June White, pro se
    James F. Radke, Esq
    Olga L. Gordon, Esq.
    Geraldine L. Karonis, US Trustee